# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0244
Filed January 7, 2026

————————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Dillon Trevor Rawlins,**
Defendant–Appellant.

————————————

Appeal from the Iowa District Court for Woodbury County,
The Honorable Duane E. Hoffmeyer, Judge.

————————————

**AFFIRMED**

————————————

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau and
Anagha Dixit (until withdrawal), Assistant Attorneys General, attorneys
for appellee.

————————————

Considered without oral argument
by Tabor, C.J., and Greer and Buller, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

Dillon Rawlins appeals her convictions for possession of a controlled substance and introduction of a controlled substance into a detention facility. Because we find substantial evidence that she possessed a baggie of methamphetamine while being booked into the Woodbury County Jail, we affirm the convictions.

## I.      Facts and Prior Proceedings

Sioux City Police Officer Andrew Jindra stopped Rawlins and arrested her for non-drug related reasons. Before placing her in the patrol car, Jindra handcuffed Rawlins and did a pat-down. Rawlins denied having any weapons or drugs on her person. Jindra transported Rawlins to jail. Before entering the jail, Jindra searched Rawlins's pockets, finding nothing.

Inside the jail, correctional officer Daniel Luna took over, conducting another pat-down and again searching Rawlins's pockets. No officer searched Rawlins's bra or underwear.[1] Luna then directed Rawlins to a booking cell, instructing her to remove all her clothing except underwear and change into a jail jumpsuit.

Meanwhile, officers were booking a second inmate into the jail. They directed her to change clothes in the booking cell right after Rawlins left it. But a few seconds after entering, that inmate returned to the lobby saying, "That is not mine." Officer Luna went into the cell and saw a blue ziplock baggie containing a crystalline substance on the floor in the back corner.

---

[1] Officer Luna explained that only male officers were available to conduct the search and that Rawlins identified as a transgender woman. The trial transcript and pleadings refer to Rawlins as "he/him," but the appellate briefs use "she/her." We use the same pronouns as the appellate briefs.

Upon finding that baggie, Officer Luna activated his body camera. The jury watched the video. Showing Rawlins the baggie, Luna asked, "This yours?" Rawlins shook her head, and Luna replied, "You were in there when you got changed out." Rawlins denied the baggie was hers or that she had seen it in the room. Luna said, "You were the last person in there so just be honest with me. Is this yours or not?" Rawlins replied, "I guess. If it's gonna be put on me anyways."

Officer Luna then asked what the substance was. Although the audio is unclear, Rawlins can be heard to answer, "the rocks I found." At trial, Officer Luna recalled Rawlins saying she "did find something on the streets." When Luna asked "where was it on you?" Rawlins said it was in her pocket though the officers had checked her pockets. Luna also told Rawlins the other inmate was not in the cell long enough to discard the item. The officer estimated the other inmate was only in the cell for "five seconds."

Officer Jindra submitted the baggie to the Iowa Division of Criminal Investigation criminalistics laboratory, which confirmed it contained methamphetamine.

The State charged Rawlins with possession of a controlled substance, in violation of Iowa Code section 124.401(5) (2022), a serious misdemeanor, and introduction of a controlled substance into a detention facility, in violation of section 719.8, a class "D" felony. A jury found Rawlins guilty on both counts, and Rawlins appeals.

## II.    Scope and Standard of Review

We review sufficiency challenges for correction of errors at law. *State v. Meisheid*, 26 N.W.3d 800, 802 (Iowa 2025). We uphold the verdict if the evidence in support is substantial, which means it could convince a rational

3

fact finder beyond a reasonable doubt. *State v. Manning*, 26 N.W.3d 385, 390 (Iowa 2025). Because our review is "highly deferential" to the jury, we view the evidence in the light most favorable to the verdict and take every reasonable inference that the jury could deduce from the evidence. *Meisheid*, 26 N.W.3d at 802 (citation omitted).

## III.   Discussion

Rawlins contends there was insufficient evidence for the jury to find she possessed the methamphetamine.[2] She argues she had neither actual nor constructive possession. The jury instructions explained the nuances of possession:

> A person who has direct physical control over a thing on his person is in actual possession of it.
>
> A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is in constructive possession of it. A person's mere presence at a place where a thing is found or proximity to the thing is not enough to support a conclusion that the person possessed the thing.

---

[2] To find Rawlins guilty of introducing a controlled substance into a detention facility, the jury had to find she was confined in the Woodbury County jail, which is a detention facility, and she introduced methamphetamine there. To find her guilty of possession of a controlled substance, the jury had to find she knowingly or intentionally possessed the methamphetamine.

Rawlins only challenges the evidence of possession, though it is not an explicit element of the introduction offense. She doesn't contend that evidence is insufficient to show introduction. *See, e.g.*, *State v. Sundall*, No. 24-0198, 2025 WL 2408466, at *5–6 (Iowa Ct. App. Aug. 20, 2025) (finding insufficient evidence of introduction when officer controlled and transported bag containing methamphetamine into the jail).

A person "can be in actual possession of a controlled substance when the controlled substance is found on the defendant's person or when substantial evidence supports a finding it was on the defendant's person at one time." *State v. Jones*, 967 N.W.2d 336, 341 (Iowa 2021) (cleaned up). The State can show possession with direct or circumstantial evidence or a combination. *Id.* at 342. And the jury may "stack" inferences it draws from circumstantial evidence, as long as the inferences are logical rather than "impermissible speculation." *Id.*

Under those definitions, the State maintains that the record supports both actual and constructive possession. In the State's view, Rawlins had constructive possession of the baggie discarded in the corner of the booking cell. And she had actual possession because the evidence was sufficient to show she hid the drugs on her person at some point before they were found in the cell.[3]

We agree with the State's reading of the record. Although at first Rawlins denied the baggie was hers, she soon dropped that denial. A reasonable juror could infer that when the officer confronted her, "Is this yours or not?" Her half-hearted reply, "I guess," was an admission. A tepid admission, but an admission nonetheless.

And while officers did not discover the drugs during two pat-downs and a search of her pockets, no one searched Rawlins's undergarments before she went into the changing cell. The baggie was small enough to be hidden in a bra or underwear—Officer Luna compared the size to a Post-it note. And

[3]The State argues that Rawlins was told she would be entering a full-body scanner after changing her clothes, implying that she knew the only chance to get rid of the drugs was to leave them in the changing cell. But neither Officer Luna's testimony nor his body cam verify that he mentioned the scanner to Rawlins before instructing her to change.

although Rawlins told the officer that she did not know what was in the baggie, she described its contents as "rocks."

The timing also worked against Rawlins. Almost immediately after Rawlins left the cell, the second inmate entered, spotted the baggie, and notified the officers. From that sequence, the jury could deduce that Rawlins tried to abandon the drugs in the booking cell. The jurors could reasonably infer from the timing—coupled with her statements divulging knowledge of and familiarity with the baggie—that Rawlins had the drugs hidden on her person. The jurors could have believed that she secreted the baggie in her underwear, bra, or elsewhere on her body where the officers didn't search, before she entered the booking cell. Thus, the jurors could reasonably conclude Rawlins possessed the drugs at some point while inside the jail. *See id*. at 341. Substantial evidence supports the jury's verdicts.

**AFFIRMED.**